## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **A PTY LTD.,** | § | |
| | § | **Civil Action No.** 1:15-cv-155-RP |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Jury Trial Demanded** |
| | § | |
| **EBAY, INC,** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |

## PLAINTIFF A PTY'S RESPONSE TO
## <u>DEFENDANT EBAY, INC'S MOTION TO DISSMISS</u>

# **TABLE OF CONTENTS**

I.   INTRODUCTION .................................................................................................. 1

II.  BACKGROUND ................................................................................................... 1

III. SUMMARY OF THE ARGUMENT ..................................................................... 2

IV. APPLICABLE AUTHORITY ............................................................................... 2

V.  ARGUMENT ........................................................................................................ 5

    i.   Defendant's Motion to Dismiss is Premature ..................................................... 7

    ii.  The Claims of the '572 Patent are Not Directed to an Abstract Idea ............................ 11

    iii. The '572 Patent's Claims Embody an Inventive Concept ................................. 14

VI. CONCLUSION .................................................................................................. 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### <u>Cases</u>

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336 (Fed.Cir.2013) ...... 3

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,* 134 S. Ct. 2347 (2014) .......................................... passim

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................ 3

*BASCOM Global Internet Servs., Inc. v. AT & T Mobility LLC*, 2015 WL 2341074 (N.D. Tex.

    May 15, 2015) ................................................................................................................ 3

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................... 3

*Bilski v. Kappos*, 130 S. Ct. 3218 (U.S. 2010) ................................................................ 4

*buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350 (Fed. Cir. 2014) ..................................... 9

*Certified Measurement, LLC v. CenterPoint Energy Houston Elec. LLC*, 2015 WL 1432324

    (E.D. Tex. Mar. 30, 2015) ............................................................................................. 3

*Clear with Computers, LLC v. Altec Indus., Inc.*, 2015 WL 993392 (E.D. Tex. March 3, 2015) 10

*CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269 (Fed. Cir. 2013) ........................... 4, 13, 16

*Content Extraction v. Wells Fargo*, 776 F.3d 1343 (Fed. Cir. 2014) ........................... 8

*DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014) ................................... 6

*Diamond v. Chakrabarty*, 447 U.S. 303 (1980) ............................................................... 4

*Doe v. MySpace, Inc.*, 528 F.3d 413 (5th Cir. 2008) .................................................... 3

*Fox Group, Inc. v. Cree, Inc.*, 700 F.3d 1300 (Fed. Cir. 2012) .................................... 7

*Joao Control & Monitoring Sys., LLC v. Protect Am., Inc.*, 2015 WL 3513151 (W.D. Tex. Mar.

    24, 2015) ........................................................................................................................ 3

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 2014 WL 4364848 (E.D. Tex. Sept. 3, 2014)

    .......................................................................................................................................... 9

*Lumen View Tech. LLC v. Findthebest.com, Inc.*, 984 F. Supp. 2d 189 (S.D.N.Y. 2013) ............. 9

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (2012) ....................... 4, 16

*McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354 (Fed.Cir. 2007) ..................................................... 3

*Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238 (2011) ............................................................. 3

*Morales v. Square*, Inc., 2014 WL 7396568 (W.D. Tex. Dec. 30, 2014) ........................................ 9

*Ortho Pharm. Corp. v. Smith*, 959 F.2d 936 (Fed. Cir. 1992) ..................................................... 10

*Plantronics, Inc. v. Aliph, Inc.*, 724 F.3d 1343 (Fed. Cir. 2013) .................................................... 7

*Preservation Tech., LLC v. NFL Enterprises, LLC*, No. 14-cv-1295 (D. Del. May 27, 2015) ...... 8

*Shelcore, Inc. v. Durham Indus., Inc.*, 745 F.2d 621 (Fed. Cir. 1984) ........................................ 10

*StoneEagle Serv., Inc. v. Pay-Plus Solutions, Inc.*, 2015 WL 518852 (M.D. Fla. Feb. 9, 2015... 10

*Ultramercial, Inc. v. Hulu, Inc.*, 772 F.3d 709 (Fed. Cir. 2014)......................................... 8, 11, 12

*Vehicle Intelligence & Safety LLC v. Mercedes-Benz USA, LLC*, 2015 WL 394273 (N.D. Ill. Jan. 29, 2015) ...................................................................................................................................... 9

### Statutes

35 U.S.C. § 101 ......................................................................................................................... 4, 18

### Rules

FED. R. CIV. P. 12(b)(6) .................................................................................................................. 2

## I.   INTRODUCTION

Plaintiff A Pty Ltd ("A Pty" or "Plaintiff") files this response to the Motion to Dismiss of Defendant eBay, Inc. ("eBay" or "Defendant") [Dkt. 20] (the "§ 101 Motion"). Defendant's § 101 Motion urges this Court to dismiss Plaintiff's lawsuit under Rule 12(b)(6) in view of its allegations that U.S. Patent No. 7,010,572 (the "'572 Patent") lacks patentable subject matter. Defendant's allegation is legally incorrect. A Pty urges that Defendant's § 101 Motion be denied, and in support thereof states as follows:

## II.   BACKGROUND

A Pty filed suit against six companies in this District on February 23, 2015, alleging infringement of the '572 Patent. Dkt. 1. In lieu of answering the Complaint, five of the six defendants joined in filing substantially identical 12(b)(6) Motions to Dismiss based on the alleged invalidity of the '572 Patent challenging patentability under 35 U.S.C. § 101. *See* Dkt. 14. The sixth defendant, Google Inc., also chose to file a 12(b)(6) Motion to Dismiss based on 35 U.S.C. § 101 rather than answering the Complaint.[1]  Defendant's reply in support of their § 101 Motion is due on June 29, 2015. Dkt. 22.

The '572 Patent was the result of an A Pty Director's recognition of specific problems with conventional methods for sending email.  One technical problem was that email addresses incorporate somewhat arbitrary URLs and truncations or other designations for a human being's identity. *See* '572 Patent at 1:41-59.  If one wanted to send an email to a person whose email address they did not know, they would first have to conduct a search or devise some other method for determining the recipient's precise email address. Moreover, in the absence of embodiments of the present invention, would-be recipients were forced to publish their preferred

---

[1] *A Pty Ltd. v. Google Inc.*, No. 15-cv-157, Dkt. 14 (W.D. Tex. May 1, 2015).

email address, subjecting themselves to unwanted intrusions on their privacy and potentially unsolicited communications. The invention embodied by the claims of the '572 Patent addresses these problems, providing an intermediary communications layer.  A user of the claimed method can forgo the initial search for an email address and use descriptors of the intended recipient, in place of the actual email address, in order to convey the email, thereby sending emails more efficiently and accurately.  A recipient of an intended communication can withhold his or her email address from the sender and/or parties with which communication is not intended.

## III.  SUMMARY OF THE ARGUMENT

As a threshold matter, Defendant's § 101 Motion is premature and not yet ripe for a decision. A Pty has yet to make any sort of comprehensive claim election and the Court thus lacks the jurisdiction to invalidate all claims of the '572 Patent, due to the absence of a case or controversy with respect to all claims, as Defendant's § 101 Motion requests.

Additionally, the '527 Patent's claims clear the § 101 hurdle for the very same reasons that an analogous patent's claims did in *DDR Holdings.* Specifically, the claims are necessarily rooted in specially-adapted computer technology in order to overcome an Internet-centric problem in an innovative way that does not preempt every application of any of the ideas posited by Defendant. The '572 Patent's claims fall within the statutory classification of "processes," and are not subject to the judicially-created exception from patentability for abstract ideas. Defendant's characterization of the supposed abstract idea is impermissibly broad and fails to account for essential claim limitations, especially in view of their ordered combination.

## IV.  APPLICABLE AUTHORITY

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal where the plaintiff "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

Regional-circuit law applies to Defendant's § 101 Motion to dismiss for failure to state a claim. *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355–56 (Fed.Cir. 2007). "The central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Joao Control & Monitoring Sys., LLC v. Protect Am., Inc.*, 2015 WL 3513151, at *2 (W.D. Tex. Mar. 24, 2015) (quoting *McZeal*, 501 F.3d at 1356); *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). Plaintiffs must provide sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A patent claim can be found directed towards patent ineligible subject matter if the **only** plausible reading of the patent must be that there is clear and convincing evidence of ineligibility." *BASCOM Global Internet Servs., Inc. v. AT & T Mobility LLC*, 2015 WL 2341074, at *6 (N.D. Tex. May 15, 2015). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Although "under certain circumstances, a determination of patent validity under section 101 may be made at the pleading stage on a motion to dismiss, the issue of patentable subject matter requires a legal analysis that can—and often does—'contain underlying factual issues.'" *Certified Measurement, LLC v. CenterPoint Energy Houston Elec. LLC*, 2015 WL 1432324, at *2 (E.D. Tex. Mar. 30, 2015) (citing *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1340–41 (Fed.Cir.2013) (internal citations omitted).

The Supreme Court has unanimously affirmed the Federal Circuit's long-established precedent that patents granted by the USPTO are presumed valid, and that the accused infringer must prove patent invalidity by clear and convincing evidence. *See Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2252 (2011); *BASCOM*, 2015 WL 2341074, at *6.

The Supreme Court has also made clear that the test for patent eligibility under Section 101 is not amenable to bright-line categorical rules. *See Bilski v. Kappos*, 130 S. Ct. 3218, 3229-30 (U.S. 2010). Further, the Federal Circuit has recognized that it has been especially difficult to apply Section 101 properly in the context of computer-implemented inventions. *See CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1277 (Fed. Cir. 2013) [hereafter "*CLS Bank*"], *aff'd Alice Corp. Pty. Ltd. v. CLS Bank Int'l,* 134 S. Ct. 2347 (2014) [hereafter "*Alice*"].

Analysis of compliance with § 101 begins with the statute, which provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. "In choosing such expansive terms . . . modified by the comprehensive 'any,' Congress plainly contemplated that the patent laws would be given wide scope." *Bilski*, 130 S. Ct. at 3225 (quoting *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980)).

Courts have fashioned three limited exceptions to the aforementioned §101 categories, prohibiting patents directed to laws of nature, physical phenomena, and abstract ideas. *See Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012).

> Thus, even inventions that fit within one or more of the statutory categories are not patent eligible if drawn to a law of nature, a natural phenomenon, or an abstract idea. The underlying concern is that patents covering such elemental concepts would reach too far and claim too much, on balance obstructing rather than catalyzing innovation. But danger also lies in applying judicial exceptions too aggressively because "all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." Taken too far, the exceptions could swallow patent law entirely.

*CLS Bank*, 717 F.3d at 1277 (*citing Mayo*, 132 S. Ct. at 1293).

As endorsed by *Alice*, Courts generally follow a two-step framework for applying the § 101 exception: "[f]irst, we determine whether the claims at issue are directed to one of those

4

patent-ineligible concepts. If so, we then ask, what else is there in the claims before us? To answer that question, we consider the elements of each claim both individually and as an 'ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application. We have described step two of this analysis as a search for an 'inventive concept'—*i.e.,* an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 134 S. Ct. at 2355 (internal citations and quotations omitted).

## V.    ARGUMENT

Each claim of a patent is evaluated under Section 101 independently. *Alice*, 134 S. Ct. at 2355.  The first step in an analysis under Section 101 is to determine whether the claims at issue fall into one of the four patentable categories of a process, machine, manufacture, or composite of matter. Here, the claims of the '572 Patent fall within the "process" category. This classification is indisputable.

Once the claims are determined to be within the scope of the patentable categories, as the claims here are, a determination is to be made whether one of the three judicially-created exceptions to patentability apply. *See Alice,* 134 S. Ct. at 2350.

The '572 Patent's claims are patent-eligible under the Supreme Court's two-step analysis announced in *Mayo* and confirmed in *Alice* for distinguishing patents directed to abstract ideas from those that claim patent-eligible subject matter. To make this distinction, the Court "must first determine whether the claims at issue are directed to a patent-ineligible concept," and if so, the Court must then "examine the elements of the claim[(s)] to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice,* 134 S. Ct. at 2357. Thus, to prevail, Defendant has the burden to prove, by

clear and convincing evidence, that all claims of the '572 Patent are not only directed to an abstract idea, but also preempt the idea itself, rather than merely being an application of that idea.

Defendant's arguments fail procedurally and substantively.  Procedurally, the Court presently lacks the jurisdiction to rule as Defendant requests.  Substantively: (1) the claims of the '572 Patent are **not** directed to an abstract idea; and (2) even if the subject claims are directed to an abstract idea, the claims are still patentable because they represent a technological innovation directed to a specific application, rather than the idea itself, include additional novel and meaningful limitations that preclude preemption of the field, and represent an inventive concept directed to patentable subject matter.

The Federal Circuit's decision in *DDR Holdings*[2] is particularly relevant to the instant § 101 Motion and strongly supports denying the Motion. The '572 Patent is analogous in all relevant aspects to the patent in *DDR Holdings* that led the Federal Circuit to conclude that its claims cleared the § 101 hurdle. First, the '572 Patent's claims do not recite a mathematical algorithm, a fundamental economic practice, or a longstanding commercial practice. *Id.* at 1257. To the extent the claims may address a business challenge, it is a challenge particular to the Internet, and thus does not negate the claims' patent eligibility. *Id.*  Second, the '572 Patent's claims stand apart from claims previously held unpatentable because they are "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *Id.*  Third, any supposed pre-Internet analogue of the claims did not have to account for the near-instantaneous communication that is now standard on the Internet. *Id.* at 1258. Fourth, the instant claims "do not broadly and generically claim 'use of the Internet' to perform an abstract business practice" instead "interactions with the Internet are manipulated to

---

[2] *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014).

yield a desired result—a result that overrides the routine and conventional sequence of events ordinarily triggered by the [sending of an email]." *Id.* at 1258-59. Finally, the claims at issue do not preempt every application of any one of the abstract ideas advanced by the Defendant; the claims recite an innovative way to solve an Internet-centric problem—how to efficiently convey an email to a party whose email address is unknown. *Id.* at 1259.

      **i.**      <u>**Defendant's Motion to Dismiss is Premature**</u>

      Defendant's § 101 Motion is premature because it asks this Court to rule on the validity of unasserted claims over which this Court lacks jurisdiction (or, at least, would waste judicial resources analyzing).

      In its § 101 Motion, Defendant asks this Court to invalidate all 49 claims of the '572 Patent pursuant to § 101. Dkt. 20 at 20. But A Pty has not asserted all 49 claims against Defendant; nor does it intend to assert all 49 claims against Defendant. A Pty has not yet disclosed in the litigation the claims that it will ultimately assert, other than alleging in the Complaint that Defendant infringes "<u>**at least**</u> claim 1." *See* Dkt. 1 (emphasis added).

      As such, at this stage, the Court lacks jurisdiction to decide the patent eligibility of all 49 claims. The Federal Circuit has repeatedly held that a court lacks jurisdiction to decide the validity of <u>**unasserted**</u> claims. *See, e.g., Fox Group, Inc. v. Cree, Inc.*, 700 F.3d 1300, 1307 (Fed. Cir. 2012); *Plantronics, Inc. v. Aliph, Inc.*, 724 F.3d 1343, 1357 (Fed. Cir. 2013). In *Fox Group*, for example, the Federal Circuit vacated a district court's ruling that all claims of the patent-in-suit were invalid because the district court did not have jurisdiction over the unasserted claims of the patents-in-suit. *See Fox*, 700 F.3d at 1307. Similarly, in *Plantronics*, the Federal Circuit held that the district court erred in invalidating unasserted claims. *See Plantronics*, 724 F.3d at 1357 ("[We have held] that the district court had no jurisdiction over the unasserted

claims of the patent at issue because there was there was no case or controversy with respect to them.").

Waiting to tackle the § 101 analysis until **after** the asserted claims have been identified (or the parties have agreed on a claim(s) that is representative of the asserted claims) comports with Supreme Court and Federal Circuit precedent.  In *Alice*, the Supreme Court recently reiterated that the focus for § 101 must remain on whether the actual "claims **at issue** are directed to [a] patent-ineligible concept[] . . . ." *Alice*, 134 S. Ct. at 2355 (emphasis added). Likewise, although the Federal Circuit has recognized the propriety of disposing of a case on § 101 grounds at the pleading stage, it has done so in cases in which the asserted claims have already been identified (*see, e.g*, *Ultramercial, Inc. v. Hulu, Inc.*, 772 F.3d 709, 712 (Fed. Cir. 2014) (setting forth that the patent holder had "alleg[ed] infringement of all claims of the [patent-in-suit]")); or in case where the parties have agreed that a challenged claim was representative of the asserted claims (*see, e.g., Content Extraction v. Wells Fargo*, 776 F.3d 1343, 1347 (Fed. Cir. 2014)).

Following these jurisdictional principles, a federal court in Delaware recently denied without prejudice a defendant's Rule 12(b)(6) motion for failure to state a claim based on § 101 where, as here, no claim election had yet occurred.  *See Preservation Tech., LLC v. NFL Enterprises, LLC*, No. 14-cv-1295, Dkt. 17 at 2 n.1 (D. Del. May 27, 2015), attached hereto as Ex. 1. In particular, the Court concluded that, where there are multiple claims and there is no agreement or stipulation regarding a limited set of representative claims, "tackling the § 101 analysis . . . is premature; at best, it is a waste of judicial resources and, at worst, does not present a case or controversy." *See id.*, Court's Response to Emergency Email, dated May 27, 2015, at 1, attached hereto as Ex. 2. The Court then ruled that, **after** "the exchange of core information . . ., the court will meet with the parties again to work out a more refined motion practice." *Id.*

Additionally, a federal court in the Eastern District of Texas has recently expressed its distaste for early § 101 motions as indicated by published procedures requiring defendants to request permission from the Court in order to file a motion to dismiss under 35 U.S.C. § 101 before the Court has issued its Claim Construction Order.[3]

The cases Defendant cites in support of its argument that the Court, at this stage of the litigation, should dispose of A Pty's Complaint pursuant to § 101 are distinguishable. Dkt.14 at 19 n.2. Similar to *Ultramercial and Content Extractions* and unlike this case or *Preservation*, in each of the cases cited by Defendant as being decided on the pleadings there had been an explicit or implicit claim election **prior to** the court's § 101 ruling. For example, in *buySAFE*, the plaintiff had asserted specific claims and the parties agreed as to representative claims. *See buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1351 (Fed. Cir. 2014). *Morales* involved a patent with six total claims, only one of which was asserted against the defendant. *Morales v. Square, Inc.*, 2014 WL 7396568, at *5 (W.D. Tex. Dec. 30, 2014). Claim construction proceedings had already occurred in *Vehicle Intelligence* and *Loyalty Conversions* by the time the § 101 motion was granted. *Vehicle Intelligence & Safety LLC v. Mercedes-Benz USA, LLC*, 2015 WL 394273, at *1 (N.D. Ill. Jan. 29, 2015); *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 2014 WL 4364848, at *4 (E.D. Tex. Sept. 3, 2014*). Lumen View Tech.* involved a patent with a single independent claim and the ruling on the § 101 motion issued after the parties had filed their claim construction briefing. *Lumen View Tech. LLC v. Findthebest.com, Inc.*, 984 F. Supp. 2d 189, 204 (S.D.N.Y. 2013). In *Clear with Computers*, the parties stipulated at a hearing that all

---

[3] *See* Sample Docket Control Order for Patent Cases Assigned to Judge Rodney Gilstrap and Judge Roy Payne at 5, *available at* http://www.txed.uscourts.gov/cgi-bin/view_document.cgi?document=22244 (explaining that "[p]arties seeking to file dispositive motions under 35 U.S.C. § 101 before the Court's Claim Construction Order has issued may do so only upon a grant of leave from the Court after a showing of good cause . . . .").

claims would be dismissed if the Court ruled on certain representative claims. *See Clear with Computers, LLC v. Altec Indus., Inc.*, 2015 WL 993392, at *2 (E.D. Tex. March 3, 2015).

Further, here, Defendant cannot seek to invalidate the 48 other claims of the '572 Patent by arguing that Claim 1 claims patent-ineligible subject matter. It is axiomatic that "each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim." *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 942 (Fed. Cir. 1992). As such, "[a] party challenging the validity of a claim, absent a pretrial agreement or stipulation, must submit evidence supporting a conclusion of invalidity of **each claim** the challenger seeks to destroy." *StoneEagle Serv., Inc. v. Pay-Plus Solutions, Inc.*, 2015 WL 518852, at *5 (M.D. Fla. Feb. 9, 2015) (citing *Shelcore, Inc. v. Durham Indus., Inc.*, 745 F.2d 621, 625 (Fed. Cir. 1984)).[4] Nor can Defendant argue that Claim 1, Claim 12, or any other subset of claims is representative of any claim that may be asserted in this action. The Federal Circuit has explicitly held that "a party challenging the validity of a claim, **absent a pretrial agreement or stipulation**, must submit evidence supporting a conclusion of invalidity of **each** claim the challenger seeks to destroy." *Shelcore*, 745 F.2d at 625 (emphasis added); *see, e.g., Alice*, 134 S.Ct. at 2352 (noting that the parties agreed on representative claims). The parties here have not reached any agreement or stipulation regarding "representative claims," and, for all the reasons set forth in more detail below, neither Claim 1 or Claim 12 is representative of each and every claim in the '572 Patent.

For these reasons alone, Defendant's § 101 Motion should be denied, at least at this stage

---

[4] Consequently, even assuming *arguendo* that the Court could rule on the validity of unasserted claims (as Defendant's § 101 Motion necessarily requests), it would be a waste of judicial resources for the Court to consider (and perhaps construe) claims that are not at issue in this action.

of the litigation.

### ii.     The Claims of the '572 Patent are Not Directed to an Abstract Idea

Defendant's characterization of the putative abstract idea can be readily rejected due to its disregard for the email communication itself. In its Motion, Defendant ambiguously states the abstract idea to which it claims the '572 Patent are directed. Defendant generally asserts at various points that Plaintiff's "patent recites the naked idea of an address directory;" is directed to "using information about a person to locate that person's address" (Dkt. 20 at 1); and "claims to have invented the basic concept of looking up contact information (specifically, a person's electronic mail address) using other information (*e.g.*, a person's name, telephone number, old address, or other descriptors) in a message's destination address." *Id.* at 5. Taking these statements together, it is understood that the abstract idea alleged by Defendant is using information in a message's destination address to look up the recipient's correct address.[5]

The Federal Circuit defines an abstract idea as "an idea having no particular concrete or tangible form" or one lacking a "concrete or tangible application." *Ultramercial*, 772 F.3d at 715. "Although the Supreme Court did not 'delimit the precise contours of the 'abstract ideas' category," Federal Circuit and Supreme Court precedent recognizes categories of abstract ideas; including: mathematical algorithms (counting those executed on a generic computer) and some fundamental economic and conventional business practices. *See DDR Holdings*, 773 F.3d at 1256 (quoting *Alice*, 134 S. Ct. at 2356-57).

The claims of the '572 Patent do not fall into any of these recognized categories of abstract ideas. The instant claims do not recite a mathematical algorithm, nor do they fall into the

---

[5] Google Inc. explicitly states in its motion to dismiss that the various defendants agree that "the abstract idea to which the '572 patent claims are directed is using information in a message's destination address to look up the recipient's correct address." *A Pty Ltd. v. Google Inc.*, No. 15-cv-157, Dkt 14 at 2 n.2 (W.D. Tex. May 1, 2015).

disfavored class of fundamental economic practices akin to risk hedging, intermediated settlement, generating insurance policies, using advertising as a currency, or examples of conventional business transactions cited by the Federal Circuit. *See, e.g., DDR Holdings,* 773 F.3d at 1256. No financial or business method is being claimed or performed, and Defendant makes no assertion otherwise. To the extent that the '572 Patent might be considered to be addressing a business challenge (conveying an email without an email address), it does so in a way that does not harm its patent eligibility as the "challenge [is] particular to the Internet," just as in *DDR Holdings*. 773 F.3d at 1257. The challenges faced by postal workers in delivering misaddressed mail are not equivalent to the challenge addressed by the '572 Patent's claims, as Defendant asserts. First, there is not a team of people tasked with making sure emails are delivered to the correct recipients, as there is with traditional mail; if an email is even slightly misaddressed the conventional email systems reject the email and immediately bounce it back to the sender. Just as in *DDR Holdings*, the pre-Internet analogue suggested by Defendant "did not have to account for the ephemeral nature of an Internet 'location' or the near-instantaneous transport . . . made possible by standard Internet communication protocols." *Id*. at 1258.

The '572 Patent's claims are not directed to an abstract idea merely because the claims relate to the challenge of sending an email to someone whose email address is unknown. The Supreme Court recognizes that "at some level, 'all inventions embody, use, reflect, rest upon, or apply . . . abstract ideas." *Alice*, 134 S. Ct. at 2354; *see also Ultramercial*, 772 F.3d at 715. Defendant's references to early city directories and telephone books, and "facebooks" have no bearing on their § 101 Motion; this is not an obviousness inquiry. Dkt. 20 at 10.  Defendant's notion that address directories from the 18th century or early class photo directories embody the same idea as that of '572 Patent—which is directed to functionality that is innovative even by today's standards—makes plain that Defendant is excessively generalizing the '572 Patent's

claims.  This is the danger the Federal Circuit cautioned against "because all inventions at some level embody . . . abstract ideas. Taken too far, the exceptions could swallow patent law entirely." *CLS Bank*, 717 F.3d at 1277 (internal quotations omitted). By Defendant's logic, a hypothetical patent on an early email system would be hopelessly abstract because it would be directed to the same idea as that of the letters carried by ships and horses in the early days of man: communicating via written messages.

The law is well established that "improvements to existing technologies" such as improvements "to the functioning of the computer itself" are patentable. *Alice*, 134 S. Ct. at 2351, 2358 ("the claims in *Diehr* were patent eligible *because they improved an existing technological process*, not because they were implemented on a computer") (emphasis added). As explained *supra*, the '572 Patent's claims are not merely directed to broad conceptual ideas and functional steps, but rather explicitly recite a unique solution to a specific problem arising in the realm of the Internet. Defendant bears the burden of proving, by clear and convincing evidence, that the claimed method steps are directed to the alleged abstract idea rather than an improvement over existing technology. *See DDR Holdings* at 1265. Defendant has failed to do so. The '572 Patent is an improvement over conventional methods of sending emails and results in a process "that overrides the routine and conventional sequence of events ordinarily" undertaken by a user attempting to send an email to a party whose email address is unknown by the user. *See DDR Holdings* at 1258-59. Accordingly, Defendant's Motion should be denied because the claims are not merely directed to an abstract idea and therefore pass the first inquiry of *Alice*.

### iii.   __The '572 Patent's Claims Embody an Inventive Concept__

The '572 Patent clears the Section 101 hurdle, regardless of whether it is considered to be directed to an abstract idea, because its claim elements are directed to a patent-eligible application that embodies an inventive concept.

Under the second part of the Supreme Court's *Alice* framework, the Court should "examine the elements of the claim to determine whether it contains an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application," of that idea because of the concern that the patent would preempt the use of an approach and "effectively grant a monopoly over an abstract idea." *Alice,* 134 S. Ct. at 2357. However, the Federal Circuit recognizes that "claims [which] do not attempt to preempt every application of the idea" and thus "include 'additional features' that ensure the claims are 'more than a drafting effort designed to monopolize the [abstract idea]'" are patentable. *DDR Holdings,* 773 F.3d at 1259. Importantly, the claim elements must be evaluated both individually **and as an ordered combination** to determine whether the claim elements sufficiently transform the nature of the claim. *Alic*e, 134 S.Ct. at 2355 (emphasis added).   Notably, while "[s]imply appending conventional steps, specified at a high level of generality, to a method already well-known in the art is not enough to supply the inventive concept," an improvement to an existing technology **is** enough. *See Alic*e, 134 S.Ct. at 2357.

The inventive concept embodied by the '572 Patent's claims is the novel method it claims for sending an email, *i.e.*, the ordered combination of its unique method for the determination of an email address coupled with sending of an email. The claims do not merely automate an existing or conventional process and they certainly impose non-conventional limitations beyond the conventional use of a directory.  Conventionally, if a person wanted to send an email to a person whose email address they did not know, they would have to first conduct some sort of

Internet or old-fashioned social network search to determine the email address. Then, with the newly-acquired email address in hand, the person would compose their email and address it to the found email address. The invention claimed by the '572 Patent turns that process on its ear. According to the '572 Patent's claims, the email composer includes descriptors/correlated information of the intended recipient. The email is sent without the necessity of revealing the address to the sender or others with access to the communication platform. This claimed method is inventive in that it eliminates the prerequisite search process and delivers an email to the correct recipient without the sender ever knowing the actual address. As explained in the '572 Patent, conventional directories "have only partly solved the problem of obtaining email addresses as they are not comprehensive.  They are also inconvenient to use because the person sending the email must access a directory and search for the desired email address as an extra step in the process of sending an email." '572 Patent 2:17-22. Sending an email, before first determining the correct email address, is not something that is conventional or non-inventive. Thus, while the individual elements of the '572 Patent's claims might be conventional standing alone, the ordered **combination** of these elements supplies the inventive concept sufficient for patent eligibility. This combination of elements is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice,* 134 S. Ct. at 2355 (alterations omitted).

It is the evaluation of the combination of claim elements that confers patent eligibility on the '572 Patent's claims.  Defendant spends much of its brief arguing that individual elements of the claims are conventional or generic, making much of the fact that the use of databases is known and non-novel and that the claims are supposedly wholly implemented using generic computers. *See* Dkt. 20 at 14-17.  As the Federal Circuit has recognized, however, at a level of sufficient granularity, almost all inventions are directed to abstract ideas and contain known or

15

conventional elements. *See CLS Bank*, 717 F.3d at 1277 (*citing Mayo*, 132 S. Ct. at 1293).  What Defendant fails to acknowledge is that it is the combination of claim elements that renders the '572 Patent's claims patent-eligible. Defendant plainly ignores the specification, particularly the Background of the Invention and the Detailed Description of the Preferred Embodiments, which each show how the claimed invention is a technological innovation over existing prior art systems by including additional functionality that was not present in prior art systems. *See* '572 Patent 1:39-59; 2:12-33; 4:5-15.   Indeed, Defendant does not and cannot argue that the '572 Patent's **<u>combination</u>** of claim elements does not embody an inventive concept. A Pty does not claim to have invented searchable databases, directories, a special-purpose computer, or any other individual claim element that Defendant propounds is non-inventive. Further, A Pty does not assert that the use of a computer in '572 Patent's claims constitutes an inventive concept. Thus, Defendant's arguments about the use of generic computers and their inability to confer patent eligibility have little impact on whether the '572 Patent's claims are patentable.

The various independent and dependent claims add meaningful limitations that focus on diverse inventive concepts. While Claim 1 focuses on the core inventive concept discussed *supra*—an efficient method for sending an email to an unknown email address—other independent claims focus on other beneficial aspects of the inventive concept. Independent Claim 12 describes a method that can be utilized to ensure an email is sent to the correct recipient when the sender unintentionally addressed an email to an incorrect address. Thus, Claim 12 is more focused on an inventive concept operating in the background that provides a benefit to the sender without the sender intentionally choosing to utilize the claimed method. Further, Claim 23 provides a method that allows the user to determine an unknown email address while avoiding the delivery of an email to the unknown email address. As a result, the user is able to learn a desired email address via an interface they are already familiar with and without

16

the need to utilize a separate program than that which they will already be utilizing to send the email.

Limiting the '572 Patent's claims to a multi-layer email communication platform infuses the claims with an inventive concept that further supports its patent eligibility. While it is true that limiting the use of an abstract idea to a particular environment is insufficient to confer patentability that is not what the '572 Patent attempts to do. *Alice*, 134 S.Ct. at 2360. Rather, as in *DDR Holdings*, the '572 Patent's claims are "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *DDR Holdings*, 773 F.3d at 1257. Defendant's only attempt to distinguish *DDR Holdings* here is to say that the '572 Patent's claims merely "recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet." Dkt. 14 at 17-18. Defendant's notion that the practice of sending email or searching for email addresses by sending email were known to the **pre-Internet world** is easily dismissed. The claims here are not artificially limited to email or the Internet. Rather, the invention itself is an improvement to the function of email systems and is necessarily rooted in computer technology to overcome a problem specific to the Internet and the sending of email.  Thus, the '572 Patent's claims contain inherent limitations that transform the nature of the claims into a patent-eligible invention and improve an existing technology, in the same way the Federal Circuit held was sufficient in *DDR Holdings*.

## VI.    CONCLUSION

For the reasons set forth above, A Pty respectfully requests that Defendant's Motion be denied, and the Court rule that the '572 Patent is directed to patentable subject matter under 35 U.S.C. § 101.

Respectfully submitted,

/s/ Jay D. Ellwanger
Jay D. Ellwanger
Texas State Bar No. 24036522
jellwanger@dpelaw.com
William M. Parrish
Texas State Bar No. 15540325
bparrish@dpelaw.com
Daniel L. Schmid
Texas State Bar No. 24093118
dschmid@dpelaw.com
**DiNovo Price Ellwanger & Hardy LLP**
7000 North MoPac Expressway
Suite 350
Austin, Texas 78731
(512) 539-2626 (phone)
(512) 539-2627 (fax)

**ATTORNEYS FOR PLAINTIFF
A PTY LTD**

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 15th day of June 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record. Any other counsel of record will be served by first class U.S. mail.

*/s/ Jay D. Ellwanger*
Jay D. Ellwanger
