IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| A PTY LTD., § | |
| § | |
| Plaintiff, § | |
| § | |
| V. § | 1-15-CV-155 RP |
| § | |
| EBAY, INC., § | |
| § | |
| Defendant § | |

## ORDER

Before the Court are Defendants' Motion for Judgment on the Pleadings, filed November 18, 2015 (Clerk's Dkt. #39), and the responsive pleadings thereto. Having considered the motion, responsive pleadings, the record in the case, and the applicable law, the Court issues the following order.

## I. BACKGROUND

Plaintiff A Pty Ltd. ("A Pty") brings this action alleging defendant eBay, Inc. ("eBay") has infringed on a patent (the "'572 Patent") held by A Pty.[1] According to A Pty, the '572 Patent

> is generally directed towards a method for conveying email messages, where the email message includes an address field that is different from the unique address of the intended recipient of the email message. The email message can include an address field that is a descriptor of the intended recipient of the email message, rather than the account name of the recipient. The method further involves locating in a database of descriptors and email addresses the email address associated with the descriptor and forwarding the message to the email address yielded by the database.

(Orig. Compl. ¶ 7). In its sole claim for relief, A Pty alleges eBay has infringed one or more claims of the '572 Patent, at a minimum by "making, having made, providing, using, and/or distributing their communications platform that enables users to contact and convey email messages to sellers

---

[1] Plaintiff simultaneously filed separate suits against Amazon, Inc., Facebook, Inc., HomeAway, Inc., Microsoft Corporation and Google, Inc. asserting each of those entities also infringed on the '572 Patent. Plaintiff subsequently dismissed its suit against Microsoft Corporation.

via a descriptor of the intended recipient." (*Id*. ¶ 11).

Defendant previously filed a motion to dismiss Plaintiff's complaint for failure to state a claim. In that motion, Defendant argued that the '572 Patent claims are not patent-eligible under 35 U.S.C. § 101 ("Section 101"). The Court concluded Defendant "ha[d] not met its burden to show, as a matter of law, that every possible plausible construction of each of the forty-nine claims asserted in the '572 Patent render the patent ineligible." (Order, Clerk's Dkt. #34 at. 9). The Court found that, prior to a claim construction, the Court would be unable to assess Defendant's Section 101 argument and therefore denied the motion to dismiss.

The parties subsequently conducted claim construction. They agreed on the proper construction of the only term identified by either party as requiring interpretation. Specifically, the parties agreed the term "email address" is to be construed as "a string of characters complying with an addressing format for transmission of an email message by the SMTP protocol."

Defendant has now filed a motion for judgment on the pleadings. Defendant argues Plaintiff is not entitled to relief because the '572 Patent claims are not patent eligible as they are nothing more than the embodiment of an abstract idea and thus not patentable.[2]

## II.  STANDARD OF REVIEW

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." FED. R. CIV. P. 12(C). "A motion brought pursuant to Rule 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). The Fifth Circuit applies the same standard to a motion under Rule 12(c) as it does for a motion under Rule 12(b)(6). *Id*. at 313 n.8; *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir.

---

[2] Amazon, Inc., eBay, Facebook, Inc. HomeAway, Inc. and Google, Inc. have filed identical motions in each case filed by A Pty asserting infringement of the '572 Patent.

1999).

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6) the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. The court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an entitlement to relief. If not, "the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting FED. R. CIV. P. 8(a)(2)).

### III.  RELEVANT LAW

The Supreme Court has made clear that "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." *Association for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013). The Supreme Court has established a two-step analytical framework for distinguishing patents that claim patent-ineligible laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts. *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012). First, the court must determine whether the claims at issue are directed to a patent-ineligible abstract idea. *Id.* at 1296-97. If so,

the court then considers the elements of each claim both individually and "as an ordered combination" to determine whether the additional elements "transform the nature of the claim" into a patent-eligible application of that abstract idea. *Id*. at 1297-98.

The Supreme Court recently applied this framework to a patent involving computer software in *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014). In *Alice*, the asserted patent claimed a software-implemented means of mitigating settlement risk by using a third-party intermediary. Applying the two-step framework, the Court first found the concept of intermediated settlement was an abstract idea long prevalent in financial practices. *Id*. at 2356 (describing the concept as "a fundamental economic practice" and a "building block of the modern economy"). In turning to the second step the Court explained that "[t]he introduction of a computer into the claims does not alter the analysis." *Id*. at 2357 (citing *Mayo* as holding "simply implementing a mathematical principle on a physical machine, namely a computer, [i]s not a patentable application of that principle"). The Court summarized its prior cases as demonstrating "that mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id*. at 2358. Notably, the Court did not reject all software-based patents, stating "many computer-implemented claims are formally addressed to patent-eligible subject matter," and specifically suggested claims which "improve the functioning of the computer itself" or "any other technology" are patent eligible. *Id*. at 2359.

## IV. DISCUSSION

eBay contends the '572 Patent is nothing more than a computerized version of the ages-old concept of an address directory. Plaintiff contends dismissal is improper because it is premature, and also because the claims of the '572 Patent are patent eligible.

Before applying the two-step analysis set forth in Alice, the Court turns to Plaintiff's assertion that "[t]he law is well established that 'improvements to existing technologies' such as

improvements 'to the functioning of the computer itself' are patentable." (Plf. Resp. at 10) (internal quotes omitted). This point is well taken, improvements to existing technologies including improvements to the functioning of the computer itself are, as a class, not inherently barred from patent-eligibility. But the point is not dispositive, such improvements are only patentable if they pass the *Alice* test. Accordingly, the Court will turn to the two steps identified in Alice.

### A. Abstract Idea

The first step in addressing patent eligibility is to determine whether the claims at issue are directed to an abstract idea. *Alice*, 134 S. Ct. at 2350. Defendant is correct that simply computerizing an abstract idea does not render the concept patent eligible. *See Alice*, 134 S. Ct. at 2359 (concluding claims "simply instruct[ing] the practitioner to implement the abstract idea of intermediated settlement on a generic computer" not patent eligible); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715-16 (Fed. Cir. 2014) (claims merely reciting abstract idea of using advertising as currency as applied to particular technological environment of the Internet not patent eligible); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (claims reciting no more than using computer to send and receive information over network in order to implement abstract idea of creating a "transaction performance guaranty" not patent eligible); *Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1344-45 (Fed. Cir. 2013) (claims reciting "generalized software components arranged to implement an abstract concept [of generating insurance-policy-related tasks based on rules to be completed upon the occurrence of an event] on a computer" not patent eligible). But the Supreme Court has also recognized that, "at some level, all inventions embody, use, reflect, rest on, or apply abstract ideas." *Alice*, 134 S. Ct. at 2345. And, as the Federal Circuit has noted, "[d]istinguishing between claims that recite a patent-eligible invention and claims that add too little to a patent-ineligible abstract concept can be difficult." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1255 (Fed. Cir. 2014).

Plaintiff contends that the '572 Patent's claims pass the Section 101 threshold because "they are directed to a process for improving computer communications using decidedly nonconventional technology."  (Plf. Resp. at 2). Plaintiff argues that the agreed construction for "email address" as "a string of characters complying with an addressing format for transmission of an email message by the SMTP protocol" firmly roots the claims of the '572 Patent as an advancement to the SMTP protocol in the field of computer network communications.  In support of this contention Plaintiff relies on the decision in *DDR Holdings*, one of the few cases post-*Alice* in which the Federal Circuit rejected a patent-eligibility challenge to a software patent.  .

In *DDR Holdings*, the Federal Circuit applied the Alice analytical framework to a patent which related to Internet webpage display technology. According to the patent, prior art systems allowed third-party merchants to "lure the [host website's] visitor traffic away" from the host website because visitors would be taken to the third-party merchant's website when they clicked on the merchant's advertisement on the host site. *DDR Holdings*, 773 F.3d at 1248.  The court described the patent-in-suit as:

> disclos[ing] a system that provides a solution to this problem (for the host) by creating a new web page that permits a website visitor, in a sense, to be in two places at the same time. . . . [T]he host website can display a third-party merchant's products, but retain its visitor traffic by displaying this product information from within a generated web page that "gives the viewer of the page the impression that she is viewing pages served by the host" website.

*Id*. at 1248-49 (internal citations omitted).

The *DDR Holdings* court acknowledged that the patent invention could be characterized as an abstract idea such as "making two e-commerce web pages look alike," but pointed out that the claims "do not recite a mathematical algorithm . . . [n]or do they recite a fundamental economic or longstanding commercial practice." *Id*. at 1257.  The court found that the claims at issue stood apart from those in *Alice* and other recent cases because they did not merely recite the performance of some business practice known in the pre-Internet world along with the requirement

to perform it on the Internet.  Rather, the court concluded "the claimed solution was necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks" and was thus patent-eligible.  *Id*. at 1258.

Plaintiff argues that the claims of the '572 Patent are analogous in all relevant aspects to the patent in *DDR Holdings*.  Plaintiff points out that, much like the patent in *DDR Holdings*, the '572 Patent does not recite a mathematical algorithm, a fundamental economic practice or longstanding commercial practice.  Rather, the patent addresses a business challenge peculiar to the Internet, the patent is rooted in computer technology, and any pre-Internet analogue of the claims did not have to account for the near-instantaneous communication now standard on the Internet.

Defendant, in turn, points out that Plaintiff's arguments ignore the fact that the asserted claims of the '572 Patent are readily characterized as an abstract idea, namely "the abstract idea of using information in a message's destination address to look up the recipient's correct address." (Def. Reply at 1).  Moreover, the Court agrees with Defendant that, unlike in *DDR Holdings* in which the Federal Circuit held the website technology patent claims did not recite a longstanding business practice, using information in a message's destination address to look up the recipient's correct address is a longstanding commercial practice.  Accordingly, Plaintiff's reliance on the decision in *DDR Holdings* is unavailing.

Plaintiff also urges the Court to look to a decision by our sister court holding a computer-based system for secure network communications to be patent-eligible because "[t]his case . . . involves a way of making computer communication itself more effective . . ."  *TQP Dev., LLC v. Intuit Inc.*, 2014 WL 651935, at *7 (E.D. Tex. Feb. 19, 2014).  According to Plaintiff, the '572 Patent is similar to the patent at issue in *TQP* because the technology "makes conventional email communications more effective and enables communication in scenarios where conventional methods would have failed."  (Plf. Resp. at 3).

The technology involved in *TQP* related specifically to an encrypted communication system. The court in *TQP* distinguished most cases invalidating patents under Section 101 as involving the use of a computer "to perform steps that are commonly performed without a computer such as [risk] hedging, effecting routine insurance transactions, or selecting an appropriate treatment regimen for a medical patient." *TQP*, 2014 WL 651935, at *7. The court found TQP's patent instead "involves a way of making computer communication itself more effective by making communication more secure" and the patent "does not involve a method of doing business that happens to be implemented on a computer." *Id*.

The Court does not find Plaintiff's reliance on *TQP* well-placed for two reasons. First, to the degree Plaintiff is correct that *TQP* suggests improved communication between computers is patent eligible, Plaintiff's patent does not address such communication. Rather, Plaintiff's patent is directed to improving communications between email users by obviating the need for precision by the user in addressing an email.

Second, contrary to Plaintiff's characterization, the *TQP* decision does not stand for the proposition that any improvement in computer communication is inherently patent eligible. Rather, the court found patent eligibility because the patent "involves a method for changing data in a way that will affect the communication system itself, by making it more secure." *Id*. Specifically, the invention in *TQP* changed the data from interpretable on creation to un-interpretable during transmission and back again upon receipt through its encryption. In contrast, the '572 Patent involves a method of doing business (i.e. the idea of using information in a message's destination address to look up the recipient's correct address), but does not involve any data modification in a way that will affect the communication system itself. The limitation of "email address" as "a string of characters complying with an addressing format for transmission of an email message by the SMTP protocol" does not effect the first step of the *Alice* analysis because a field of use limitation does not make an idea non-abstract. *Intellectual Ventures LLC v. Capital One Bank (USA),* 792

F.3d 1363, 1366 (Fed. Cir. 2015) ("An abstract idea does not become non-abstract by limiting the invention to a particular field of use or technological environment, such as the Internet").

The Court is well aware that in many cases it is difficult to distinguish between an abstract idea and its application. However, in light of the agreed claim construction, the Court concludes that the claims of the '572 Patent are more similar to the ideas that have been found to be abstract in other cases before the Supreme Court and the Federal Circuit, such as *Alice* and *Ultramercial*, involving methods of organizing business activity. The Court thus finds that the '572 Patent is most accurately characterized as directed to the abstract idea of an address directory.

**B. Inventie Concept**

The second step in addressing patent eligibility is to determine whether the remaining elements, either in isolation or combination, are sufficient to transform the nature of the claim into a patent-eligible application. *Alice*, 134 S. Ct. at 2358. The inventive concept must "ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself." *Id*. Rather, the claims must include "additional features" beyond "well-understood, routine, conventional activity." *Ultramercial*, 772 F.3d at 715 (quoting *Mayo*, 132 S. Ct. at 1298). The addition of a generic computer does not satisfy the additional features requirement. *Alice*, 134 S. Ct. at 2359 (concluding claims that "simply instruct[ed] the practitioner to implement the abstract idea of intermediated settlement on a generic computer" not patent eligible).

Plaintiff points to "the ordered combination of determining a proper email address from another incorrect address" as the inventive concept embodied by the '572 Patent beyond the abstract idea. (Plf. Resp. at 11.) Plaintiff contends that this inventive step of combining all the elements of the '572 Patent is sufficiently transformative to turn the abstract idea into a patent-eligible application because it represents an improvement to an existing technology that enables computer network communication that would fail using conventional methods. Defendant,

in turn, argues the '572 Patent merely automates an existing or conventional process

Since *Alice*, the Federal Circuit has recognized that claims "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks" are patentable. *DDR Holdings*, 773 F.3d at 1257. For example, another district court has concluded a patent related to mapping between an object-oriented program and a relational database overcame a computer specific problem because "object-oriented programs exist only in the realm of computers, and relational databases are utilized primarily, if not exclusively, on computers." *DataTern, Inc. v. Microstrategy, Inc.*, 2015 WL 5190715 at *8 (D. Mass. Sept. 4, 2015).

Plaintiffs contend that the '572 Patent is analogous to the patents at issue in *DataTern* and *DDR Holdings* because it overcomes a problem specifically arising in the realm of computer networks. The Court disagrees. The claims of the '572 Patent do not overcome a problem specifically arising in the realm of computer networks. Rather, those claims address a long-standing problem (i.e. finding the correct destination address in order to make a message or package deliverable) in a computer setting. The Supreme Court has made clear that simply implementing a long standing practice on a computer is not enough for patentability. *See Alice*, 134 S. Ct. at 2358 ("limiting the use of an abstract idea to a particular technological environment is not enough for patent eligibility."). Accordingly, the Court finds that the claims of the '572 Patent do not have sufficient "additional features" beyond the abstract idea of an address directory to transform the claims into patent eligible subject matter. *Ultramercial*, 772 F.3d at 715 (quoting *Mayo*, 132 S. Ct. at 1298).

## V.  CONCLUSION

The Court hereby **GRANTS** Defendants' Motion for Judgment on the Pleadings (Clerk's Dkt.

#39).

    **SIGNED** on February 29, 2016.

                                      ROBERT L. PITMAN
                                      UNITED STATES DISTRICT JUDGE